**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST          )
FROM THE UKRAINE                 )
IN THE MATTER OF                 )     Misc. No. 07-
GREENWAY 1, LLC                  )

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the

Application for an Order pursuant to Title 28, United States

Code, Section 1782, in order to execute a  letter of request from

the Ukraine.  A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Ukrainian

authorities who are investigating a case of alleged attempted

misappropriation, embezzlement of property or gaining possession

of it by abuse of official position and money laundering.

EVIDENCE SOUGHT:

The Ukrainian authorities seek information from a

company which resides in this District and the Delaware Secretary

of State's Office. Thus, the information the Ukrainians seek may

be obtainable here.  The authority for this Court to accede to

this request is contained in Title 28, United States Code,

Section 1782, which states in part:

(a)  The district court of the district in which a person
     resides or is found may order him to give his testimony
     or statement or to produce a document or other thing for
     use in a proceeding in a foreign or international
     tribunal, including criminal investigations conducted
     before formal accusation.  The order may be made pursuant

to a letter rogatory issued, or request made, by a
foreign or international tribunal or upon the application
of any interested person and may direct that the
testimony or statement be given, or the document or other
thing be produced, before a person appointed by the
court. By virtue of his appointment, the person
appointed has power to administer any necessary oath and
take the testimony or statement. The order may prescribe
the practice and procedure, which may be in whole or part
the practice and procedure of the foreign country or the
international tribunal, for taking the testimony or
statement or producing the document or other thing. To
the extent that the order does not prescribe otherwise,
the testimony or statement shall be taken, and the
document or other thing produced, in accordance with the
Federal Rules of Civil Procedure.

The proper criteria for determining whether the court

should exercise its discretion in favor of executing the request

are outlined in _In Re Request for Judicial Assistance from the_

_Seoul District Criminal Court_, 555 F.2d 720, 723 (9th Cir. 1977)

(citation omitted):

> Under the statute the only restrictions
> explicitly stated are that the request be
> made by a foreign or international
> tribunal, and that the testimony or
> material requested be for use in a
> proceeding in such a tribunal.... [and]
> that the investigation in connection
> with which the request is made must
> relate to a judicial or quasi-judicial
> controversy.

Moreover, " (t)he judicial proceeding for which assistance is

sought ... need not be pending at the time of the request for

assistance; it suffices that the proceeding in the foreign

tribunal and its contours be in reasonable contemplation when

the request is made." In Re Letter of Request from the Crown

Prosecution Services of the United Kingdom, 870 F.2d 686, 687

(D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in the Ukraine and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE    19801
(302) 573-6277

Dated: 10 JAN 07

*State Emblem of Ukraine*

**Public Prosecution of Ukraine**

**GENERAL PROSECUTOR'S OFFICE OF UKRAINE**

01601, Kyiv-11, Riznytska Str. 13/15                    fax: (044) 280-28-51

*04. 09.*2006  No 14/2-2833 4-05

To:

**Department of Justice
of the United States of America
Mr. Rex Young**
Suite 800
1301 New York Ave., N. W.
Washington, D.C. 20005

**Dear Mr. Young,**

The General Prosecutor's Office of Ukraine expresses its highest consideration to the Department of Justice of the United States of America and approaches with a letter of request for legal assistance.

The Investigation Division of Tax Militia for the State Tax Administration of Ukraine in Zaporizhzhia region is investigating a criminal matter No 5100503 by the elements of crimes, envisaged by Articles 15, 191 section 5 (attempted misappropriation, embezzlement of property or gaining possession of it by abuse of official position), 201 section 3 (legalization/laundering/ of the proceeds from crime) of the Criminal Code of Ukraine.

The need of separate proceedings in the territory of the United States of America has arisen in the course of investigation; in this connection the investigation body has prepared a relevant letter of request enclosed hereto.

The General Prosecutor's Office of Ukraine is seconding the above motion and following the 1998 Agreement between Ukraine and the United States of America *On Mutual Legal Assistance in Criminal Matters* applies with a request to organize its execution and to send the received materials at the address of the General Prosecutor's Office of Ukraine with reference to our number.

The General Prosecutor's Office of Ukraine assures that the above criminal matter pursues no political objectives and materials received in the course of execution of this investigatory commission will be used only in the course of its investigation and consideration at court.

Enclosure:   on ____ pages.

**Sincerely,
Acting Head of
International Law Department**                    **O.V. Kovalenko**

The seal of
the General Prosecutor's Office
of Ukraine

Translator of the General Prosecutor's Office of Ukraine                    R. Mykytenko

*Translated from Ukrainian into English*

### INTERNATIONAL INVESTIGATIVE REQUEST

Zaporizhzhya                                                                12 July 2006

Tax Militia Investigative Department of the State Tax Administration of Ukraine, Zaporizhzhya oblast hereby pays its respect to relevant authorities of the United States of America and asks for juridical assistance in criminal case № 5100503 pursuant to Agreement between Ukraine and the United States of America on Mutual Assistance in Criminal Matters of 15.03.1996.

As prescribed by current legislation of Ukraine a pretrial investigation of criminal cases is conducted by investigators of prosecutor's office in cooperation with investigators of investigative bodies and investigators of tax militia. During the pretrial investigation an investigator is empowered to make decisions in criminal cases on his/her own authority, except for situations when the court's (arbitrator's) approval or prosecutor's sanction is required by Law, and is fully responsible for compliance to law and timely legal actions.

The proceedings under criminal case № 5100503 has been instituted against essential elements of crime described in part 3, Article 209 of the Criminal Code of Ukraine (legalization (laundering) of the proceeds of crime) and essential elements of crime described in part 5, Article 191 of the Criminal Code of Ukraine (appropriation, embezzlement or taking possession of property by means of an abuse of official position) against the officials of *Greenway-1* Limited Liability Company (further referred to as *Greenway-1* LLC), identification code № 31757201, legal address: Ukraine, Zaporizhzhya, vul. Gorkogo, bud. 27, kv. 29), and is under investigation by the Tax Militia Investigative Department of the State Tax Administration of Ukraine, Zaporizhzhya oblast.

The prosecutor of Zaporizhzhya oblast supervises the investigation of this criminal case.

The Tax Militia Investigative Department of the State Tax Administration, Zaporizhzhya oblast, assures relevant law-enforcement authorities of the United States of America that this request for legal assistance in the matter in hand is drawn up in full compliance with the Ukrainian legislation by the duly authorized body within its competence.

We consider investigative actions on the territory of the United States of America necessary to be made to ensure the comprehensive, thorough and objective pretrial investigation and further hearing the criminal case in question at the court.

The Tax Militia Investigative Department of the State Tax Administration, Zaporizhzhya oblast, guarantees that all information or documents obtained on this request will be only used for investigation of criminal case and as evidence at the court hearings and under no circumstances be used for political or military purposes.

*Translated from Ukrainian into English*

## Article 209. Legalization (laundering) of the proceeds of crime

1.    Whoever, who carries out financial transactions and makes other arrangements with money or other assets obtained knowingly from any illegal action dangerous for public, that preceded legalization (laundering) of proceeds, and performs the actions aimed to hide or conceal an illicit origin of money or other assets, or possession of them, and rights on such money or assets, sources of their origin, location, displacement, and as well obtaining, possessing or using them and other assets obtained knowingly from performing any illegal action dangerous for public, that preceded the legalization (laundering) of proceeds, –

shall be punished by deprivation of liberty for a sentence from three to six years subject to debar from holding specific offices or to engage in particular kind of business for a sentence up to two years, subject to confiscation of money and other assets of crime, and forfeiture of whole property.

2.    The acts, provided for in part 1 of this Article, if repeated or committed by previous consent of a group of persons, or on a especially large scale –

shall be punished by an imprisonment for a term from seven to twelve years subject to debar from holding specific offices or being engaged in particular kind of activity for a term up to three years, subject to forfeiture of money and other assets of crime and forfeiture of whole property.

3.    The acts, stipulated in part 1 or part 2 of this Article, if committed by organized group or on a especially large scale –

shall be punished by an imprisonment for a sentence from eight to fifteen years subject to debar from holding specific offices or being engaged in particular kind of activity for a sentence up to three years including forfeiture of money and other assets of crime and forfeiture of whole property.

Notes. 1.    Pursuant to this Article, an illegal action dangerous for public that preceded legalization (laundering) of the proceeds is considered to be an action in respect of which the Criminal Code of Ukraine punishes with an imprisonment for a term from three and more years (except the actions stipulated in Articles 207 and 212 of the Criminal Code of Ukraine) or which is recognized to be an offence under the Penal Code of other country and in respect of the same action the Criminal Code of Ukraine provides responsibility and in consequence of this action illegally proceeds have been obtained.

2.    Legalization (laundering) of the proceeds of crime appears to be committed to a substantial amount, if the subject of crime covers the money or other assets in the value which exceeds the amount of six thousand tax-free minimum incomes of citizens.

*Translated from Ukrainian into English*

3.    Legalization (laundering) of the proceeds of crime appears to be committed to a particularly substantial amount, if the subject of crime covers the money or other assets in the value which exceeds the amount of eighteen thousand tax-free minimum incomes of citizens

## Article 191. Appropriation, embezzlement or taking possession of property by means of an abuse of official position

1.    Whoever, who appropriates or embezzles the assets, which have been trusted to a person or placed in the person's charge, -
shall be punished with a penalty up to fifty tax-free minimum incomes of citizens or with a correctional labor for a term up to two years, or with a restraint of liberty for a term up to four years, or with an imprisonment for a term up to four years subject to debar from holding specific offices or being engaged in specific activity for a term up to three years or without it.

2.    The official, who appropriates, embezzles or takes in possession the assets that belong to others by means of an abuse of official position, -
shall be punished with a restraint of liberty for a term up to five years, or with an imprisonment for the same term subject to debar from holding specific offices or being engaged in specific activity for a term up to three years.

3.    The acts, provided for in part 1 or part 2 of the present Article, if repeated or committed by previous consent of a group of persons, -
shall be punished with a restraint of liberty for a term from three to five years, or with an imprisonment for a term from three to eight years subject to debar from holding specific offices or being engaged in specific activity for a term up to three years.

4.    The acts, described in parts 1, 2 or 3 of this Article, if committed on a large scale, -
shall be punished with an imprisonment for a term from five to eight years subject to debar from holding specific offices or being engaged in specific activity for a term up to three years.

5.    The acts, described in parts 1, 2, 3 or 4 of this Article, if committed on a particularly large scale or by organized group, -
shall be punished with an imprisonment for a term from seven up to twelve years subject to debar from holding specific offices or being engaged in specific activity for a term up to three years and with confiscation of property.

Note. 1.    Articles 185, 186 and 189 to 191 determine that a crime is deemed to be a repeated crime, if committed by a person who had already committed any crime, stipulated either in these Articles or in Articles 187, 262 of the Criminal Code.

*Translated from Ukrainian into English*

2.     Articles 185, 186 and 189 – 190 of this Code stipulate that a large-scale damage shall be defined assuming the financial status of a complainant and the value of damage done varying at the range from one hundred up to two hundred fifty tax-free minimum incomes of citizens.

3.     Articles 185 to 191 of this Code state that an offence is committed on a large scale, if committed by a person or by a group of persons to the amount, which in two hundred fifty times or more exceeds the tax-free minimum income of citizens at the moment the offence takes place.

4.     Articles 185 – 187 and 189 to 191 of this Code state that the offence is committed on a particularly large scale, if committed by a person or by a group of persons to the amount, which in six hundred times or more exceeds the tax-free minimum income of citizens at the moment the offence takes place.

### Article 15. Criminal attempt

1. A criminal attempt is a directly intended act (action or omission) made by a person and aimed directly at the commission of a criminal offense prescribed by the relevant article of the Special Part of this Code, provided this criminal offense has not been consummated for reasons beyond that person's control.

2. A criminal attempt is deemed consummated when a person has completed all such actions as he/she deemed necessary for the consummation of an offense, however, the offense was not completed for the reasons beyond that person's control.

3. A criminal attempt is deemed unconsummated when a person has not completed all such actions as he/she deemed necessary for the consummation of an offense for the reasons beyond that person's control.

**In the course of pretrial investigation it is established the following:**

On 19 March 2003 *Greenway-1* LLC and reflected in the record *Tekhnoproekt* Private Company (EDRPOU № 31081870, city of Odesa, 65021, vulytsia Dyukovs'ka, 6) concluded Agency Agreement № 19-03/03, according to which an agent *Tekhnoproekt* Private Company committed itself to enter into one or more foreign-economic contracts on its behalf and at the Principal's account as *Greenway-1* LLC concerning the sale of telecommunications network control systems for general use "Sapphire" TU U 33.2 -23573750-002-2003 (Ukrainian standards), which is owned by the Principal.

On 2 April 2003 according to the acceptance report of goods under Agency Agreement № 19-03/03 dated 19.03.03 the Principal (Greenway-1 LLC) had delivered to *Tekhnoproekt* Private Company the goods on commission, namely, telecommunications network control system for general use Sapphire, which conforms to TU U 33.2 -23573750-002-2003 in the quantity of 14 pieces for total amount of UAH 50,960,000.

Translated from Ukrainian into English

In pursuance of Agency Agreement № 19-03/03 dated 19.03.03, the Agent (*Tekhnoproekt* Private Company) on own behalf entered into similar export contracts with a non-resident *MGR United Corporation* (1501, Kings Highway, Brooklyn, NY 11229, USA, account ███████████████ President: Mikhail GITELMAN) for the supply of the equipment, i.e. telecommunications network control system for general use Sapphire, namely:

- №012/TEX dated 20.03.03 – six pieces to the amount of US dollars 4,097,560.92;
- №015/TEX dated 21.03.03 – eight pieces to the amount of US dollars 5,463,414.56.

According to the terms and conditions of the above-mentioned contracts, the subject of both contracts is Sapphire telecommunications network control system for general use. Terms and conditions of delivery: *Tekhnoproekt* Private Company supplies the goods by sea on conditions INCOTERMS 2000 CPT – Gdynia, *F&T Sp.z.o.o.*, in favor of *MGR United Corporation*. The consignee of the goods is deemed to be *F&T Sp.z.o.o.* (81-127 Gdynia, Kwiatkowskiego 60) in favor of *MGR United Corporation*.

The fulfillment of export contracts is confirmed by the customs declarations. It should be mentioned, the customs declarations was stamped by Chernomors'ka Regional Customs Office proving that on 12.04.2003 the goods in full as stated in the customs declarations had been exported outside the customs territory of Ukraine.

Each customs declaration contains the following information: consignor/exporter – *Greenway-1* LLC; entity, liable for financial settlements – *Tekhnoproekt* Private Company; consignee/importer – *MGR United Corporation*; consignee - *F&T Sp.z.o.o.*; country of destination – Poland; delivery by motor vessel MSC Biskay; manufacturer of the goods – *Tekhagroservice* LLC.

On 01.05.2003 and 12.05.2003 *Greenway-1* LLC (the Principal), *Tekhnoproekt* Private Company (the Agent) and a non-resident *MGR United Corporation* concluded the assignment agreements in relation to contracts №012/TEX dated 20.03.03 and №015/TEX dated 21.03.03.

As stipulated by assignment agreements, the Creditor - *Tekhnoproekt* Private Company has assigned to the new creditor *Greenway-1* LLC and the new creditor has accepted the creditor's claims as stated below:

| The debtor's name and address | MGR United Corporation, New-York, USA | MGR United Corporation, New-York, USA |
|---|---|---|
| Subject of claim | To receive payment for the delivered goods | To receive payment for the delivered goods |
| Basis of claim | №012/TEX dated 20.03.03 | №015/TEX dated 21.03.03 |

*Translated from Ukrainian into English*

| Total amount of liabilities assigned | US dollars 4,097,560.92 | US dollars 5,463,414.56 |
|---|---|---|

From the date the assignment agreement entered into force (the date of signing) the Creditor (*Tekhnoproekt* Private Company) has withdrawn from liabilities to the Debtor (*MGR United Corporation*), and the New creditor *Greenway-1* LLC has assumed the liabilities to the Debtor. The Debtor *MGR United Corporation* committed itself to meet its liabilities under contracts №012/TEX dated 20.03.03 and №015/TEX dated 21.03.03 in favor of the New creditor (*Greenway- 1* LLC) onto the Creditor's account: ███████████ with Kyiv Branch of Joint-Stock Commercial Bank "Noviy", Kyiv, Ukraine, MFO 322670, correspondent bank: UNION BANK OF CALIFORNIA INTERNATIONAL, New-York, USA, SWIFT code ████████████

Pursuant to the Assignment Agreements under Contracts №012/TEX dated 20.03.03 and №015/TEX dated 21.03.03 Greenway-1 LLC received onto its account № ███████████ the currency (US dollars) credited from correspondent account № ███████ with Kyiv Branch of Joint-Stock Commercial Bank Noviy (MFO 322670), which was transferred by the third party (payer) indicating payment details as follows: currency transfer for (on behalf of) *MGR United Corporation* under Contracts №012/TEX dated 20.03.03 and №015/TEX dated 21.03.03. The received total amount of US dollars 9,560,975.48 is equal to UAH 50,988,919.46 at the exchange rate of National Bank of Ukraine, including the payments under the following Contracts: №012/TEX dated 20.03.03 in the amount of USD 4,097,560.92 (UAH 21,852,529.61), №015/TEX dated 21.03.03 in the amount of USD 5,463,414.56 (UAH 29,136,389.85).

In fact, the payment in favor of *Greenway-1* LLC under Contracts №012/TEX dated 20.03.03 and №015/TEX dated 21.03.03 was made for *MGR United Corporation* by three different non-residents without entering into any assignment agreements (contracts), namely:

- TRENDMAX LLC
- GATESTAR CONSULTING LTD LLC
- INTROALLIANCE L.L.C.

In the course of pretrial investigation it was established that on 12.05.2003 *Greenway-1 LLC* in the person of Mr. G.F. Kapitonenko, further referred to as the "Creditor", and *MGR United Corporation* in the person of Mr. Mikhail Gitelman, further referred to as the "Debtor", *TRENDMAX LLC* in the person of Mr. Andre Soltas, further referred to as the "New debtor" entered into Additional Agreement № 1 to the Contract №012/TEX dated 20.03.03, pursuant to which the Debtor has transferred its debt in the amount of USD 4,097,560.92 under Contract №012/TEX dated 20.03.03 to the New debtor upon the Creditor's consent.

*Translated from Ukrainian into English*

In addition, in the course of pretrial investigation it was established that on 17.02.2001, 17.02.2002, 17.02.2003 on behalf of *TRENDMAX LLC* representative Mr. Patrick McLaughlin, there was drawn up the general power of attorney valid for one year, authorizing the citizen of Ukraine Ms. Lyudmyla Vasylivna Kachyns'ka, date of birth 12.09.1979, passport CH 133105, issued by Volodarsk RV UMVS of Ukraine for Kyiv Oblast on 14.02.1996, to exercise on the company's behalf the powers, including opening and maintaining the bank accounts of *TRENDMAX LLC*.

On 04.06.2001 on behalf of Ms. Lyudmyla Vasylivna Kachyns'ka account № 11520009109 was opened with LATEKO BANKA (Birznieka-Upisa 21, LV-1011, Riga, Latvia) and maintained till the date of the account closing on 01.06.2003.

In the course of interrogation as a witness, Ms. L.V. Kachyns'ka, explained that she never had any concern to *TRENDMAX LLC* and never knew its officials, neither opened the account with LATEKO BANKA nor pass any orders with regard to this account. In 2000 she lost her passport therefore it is most likely that the account was opened by some persons or person unknown to her, who used her passport data.

Furthermore in the course of pretrial investigation there was established, that on 06.05.2003 the general power of attorney was drawn up valid for one year on behalf of Mr. Patrick McLaughlin and Mr. Sean O'Brennan in the name of Mr. Yuriis Sergeis, born on ███████ passport ███████ issued on ███████ identification number ███████ authorizing him to act in the interests of the company, including opening and maintaining the bank accounts of *TRENDMAX LLC*.

On 04.06.2001 on behalf of Mr. Yuriis Sergeis account ███████ was opened with BANK-PAREX BANK SMILSHU STREET 3 RIGA LV 1522 LATVIA and maintained till the date of the account closing on 01.06.2003.

In pursuance of the Assignment Agreement made with *Greenway-1* LLC the Agent *(Tekhnoproekt Private Company)* on its own behalf entered into the similar export contracts with a non-resident *MGR United Corporation* (1501, Kings Highway, Brooklyn, NY 11229, USA, account Citibank N.A. ███████ President: Mikhail GITELMAN) for a supply of Kuotks-172114 telecommunications network equipment control complexes:

• №024/TEX dated 23.08.03 — contract for eight pieces to the amount of US dollars 5,583,076.88;

• №022/TEX dated 21.08.03 — contract for nine pieces to the amount of US dollars 6,280,961.49.

*Translated from Ukrainian into English*

- №021/TEX dated 20.08.03 – contract for seven pieces to the amount of US dollars 4,885,192.27;
- №019/TEX dated 19.08.03 – contract for ten pieces to the amount of US dollars 6,978,846.10;
- №025/TEX dated 26.09.03 – contract for ten pieces to the amount of US dollars 6,978,846.10.

According to the terms and conditions of the specified contracts, the subject of the contracts is telecommunications network equipment control complexes. The terms and conditions of delivery: *Tekhnoproekt* Private Company supplies the goods by sea on conditions INCOTERMS 2000 CPT – Hamburg, in favor of *MGR United Corporation.*

The fulfillment of export contracts is confirmed by the customs declarations. It should be mentioned, the customs declarations was stamped by Chernomors'ka Regional Customs Office proving that on 12.04.2003 the goods in full as stated in the customs declarations had been exported outside the customs territory of Ukraine.

Each customs declaration contains the following information: consignor/exporter – *Greenway-1* LLC; entity, liable for financial settlements – *Tekhnoproekt* Private Company; consignee/importer – *MGR United Corporation*; country of destination – the United States of America; delivery by motor vessel MSC Biskay; manufacturer of the goods – *Favorit* Private Enterprise.

Pursuant to the Contracts №024/TEX dated 23.08.03, №022/TEX dated 21.08.03, №021/TEX dated 20.08.03, №019/TEX dated 19.08.03, №025/TEX dated 26.09.03, *Tekhnoproekt* Private Company received on its clearing account ▮▮▮▮▮▮▮ the currency (USA dollars) in the amount of US dollars 23,728,076.74 credited from its correspondent account № ▮▮▮▮▮▮▮ with Joint-Stock Bank Brokbusinessbank (MFO ▮▮▮, which had been transferred by a non–resident payer *SUNSET* LLC (Bank: Aizkraukles Banka, acc. № ▮▮▮▮▮▮▮; indicating the payment details as follows: currency funds transfer on behalf of *MGR United Corporation* under Contracts №019/TEX dated 19.08.03, №021/TEX dated 20.08.03, №022/TEX dated 21.08.03, №024/TEX dated 23.08.03 and №025/TEX dated 26.09.03.

The received total amount of US dollars 23,728,076.74 is equal to UAH 126,506,241.14 at the exchange rate of National Bank of Ukraine.

In fact, the payment in favor of *Tekhnoproekt* Private Company under Contracts №024/TEX dated 23.08.03, №022/TEX dated 21.08.03, №021/TEX dated 20.08.03, №019/TEX dated 19.08.03, №025/TEX dated 26.09.03 was made for *MGR United Corporation* by a non–resident without entering into any assignments agreements (contracts), namely ▮▮▮▮

- *SUNSET* LLC

*Translated from Ukrainian into English*

In the course of pretrial investigation pursuant to letter № 55/173 dated 24.03.04 by Zaporizhzhya Representation of Interpol Bureau in Ukraine was established that *MGR United Corporation* (USA) was registered on the USA territory on 22.08.1995 under the registration number ███████ and on 29.12.1999 the specified company announced of the liquidation. Hence, on the date of concluding the contracts between *Greenway-1* LLC, the agent *Tekhnoproekt* Private Company, and a non-resident company *MGR United Corporation* (USA), the latter terminated its existence as a legal entity since 1999 for the reason of liquidation. This proves that the information stated in the customs declarations concerning all contracts, which had been concluded with *MGR United Corporation*, is appeared to be false.

Based on the responses received from the Interpol Bureau in Ukraine, stating that *F&T Sp.z.o.o.* (Poland) never had financial and commercial relations with *Greenway-1* LLC, and on 29.12.1999 MGR United Corporation (USA) was wound up, the investigators consider contracting and performing any export of goods (equipment) between the specified companies being impossible, and therefore the customs declarations submitted for inspection can not be used as the ground for confirmation of export of the goods overseas, since it contradicts to the provisions of the legislation of Ukraine in effect.

Nevertheless, due to the foresaid foreign-economic activity performed under the contracts made through the agents with a nonresident *MGR United Corporation* (USA) and an illicit application of VAT zero rate for the export of equipment, the officials of *Greenway-1* LLC had obtained from the state budget the funds in the amount of UAH 79,175,858 which they used for a legal turnover in conducting the company's financial and economic activities.

To ensure the comprehensive, thorough and objective investigation of the criminal case in question, it is considered to be necessary to perform legal proceedings on the territory of the United States of America.

**In order to perform this request it is essential to carry out the following actions:**

1. To obtain from relevant authorities the information in respect of *MGR United Corporation,* specifying its incorporators, directors, number of employees, date of registration, duration and activities, where the company was wound up, the reasons and the date of winding up.

2. To examine the incorporators of *MGR United Corporation* company and its officials with the following questions:

   ➢ Who were the initiators to establish the company? Did the incorporators have intentions to carry out economical activity to gain a profit?

   ➢ Who was appointed as the director of the company and under what circumstances? Please, provide the director's personal details and functional duties.

*Translated from Ukrainian into English*

➢ Has Mr. Mikhail Gitelman ever worked for the company? If so, please, indicate the period, his position and functional duties.

➢ How did the incorporators exercise control in respect of the company's activities?

➢ What kinds of activity did the company perform within the time of existence?

➢ Did the company have the economical and financial relations with companies in Ukraine and Poland? If so, what was the relations nature?

➢ Did the company conclude the contracts as follows: №012/TEX dated 20.03.03 to the amount of •USD 4,097,560.92, №015/TEX dated 21.03.03 to the amount of USD 5,463,414.56, №016/TEX dated 24.03.03 to the amount of USD 4,780,487.74, №017/TEX dated 25.03.03 to the amount of USD 6,146,341.38 each for the supply of Sapphire telecommunications network control systems for general use?

➢ Did the company conclude the contracts as follows №005K-05 dated 14.05.03 to the amount of USD 6,120,534.70, №006K-05 dated 15.05.03 to the amount of USD 5,508,481.23, №007K-05 dated 16.05.03 to the amount of USD 4,896,427.76, №008K-05 dated 19.05.03 to the amount of USD 6,732,588.17 for the supply of Dostup-112GL-002ST automated control systems for warehouses and working areas?

➢ Did the company conclude the contracts as follows:

№024/TEX dated 23.08.03 to the amount of USD 5,583,076.88, №022/TEX dated 21.08.03 to the amount of USD 6,280,961.49, №021/TEX dated 20.08.03 to the amount of USD 4,885,192.27, №019/TEX dated 19.08.03 to the amount of USD 6,978,846.10, №025/TEX dated 26.09.03 to the amount of USD 6,978,846.10 each for a supply of Kuotks-172114 telecommunications network equipment control complexes.

➢ If so, when, where and with what company had been the contracts concluded?

➢ Who of officials signed the contracts and under what circumstances?

➢ What was the purpose of buying Sapphire telecommunications network control system for general use, Kuotks-172114 telecommunications network equipment control complexes, Dostup-112GL-002ST automated control systems for warehouses and working areas? What were the need and quantity?

➢ How was the delivery and settlements arranged?

> ➤ Is the above-mentioned equipment owned by *MGR United Corporation*? If no, whom was it sold to?

and also concerning any other questions which may arise in the course of interrogation.

3.  To determine the location of Mr. Mikhail Gitelman, residing at the address 1873 81 Street, Apt. E3, Brooklyn, NY 11214, holding passport ▮▮▮▮ of P type, issued on ▮▮▮▮ by New-York Passport Agency, and examine him as a witness in respect of the following:

▪  What position did he hold up in *MGR United Corporation* and for how long? What kinds of functional duties did he perform?

▪  Did he conclude any contracts with the Ukrainian companies, namely with *Greenway-1* Limited Liability Company (Zaporizhzhya, Ukraine), *Tekhnoproekt* Private Company (Odesa, Ukraine)?

▪  If so, under what circumstances did he conclude the contracts? Who did sign contracts on behalf of the company? What were the terms and conditions of the contracts and obligations of the parties (terms of delivery, settlements, duration)?

▪  Did the parties fulfill their obligations under the concluded contracts till this time?

▪  Where are the goods purchased pursuant to the contracts?

and also concerning any other questions which may arise in the course of interrogation.

4.  To take the specimens of signature and handwriting from the officials of *MGR United Corporation*, in particular, from Mr. Mikhail Gitelman.

5.  To get the specimens of *MGR United Corporation* seals and stamps.

6.  To check Sapphire telecommunications network control systems for general use, Kuotks-172114 telecommunications network equipment control complexes, Dostup-112GL-002ST automated control systems for warehouses and working areas and any other equipment bought by *MGR United Corporation* from the Ukrainian companies *Greenway-1* LLC, *Tekhnoproekt* PC.

7.  To obtain from relevant authorities the information in respect of *TRENDMAX* LLC (Montchanin Mills Building, Suite A, Route 100 & Rockland Road, Montchanin, Country of New Castle), *GATESTAR CONSULTANTS* LTD LLC (6 Rockford Road, Wilmington, DE 19806-1004, USA), *INTROALLIANCE* LLC (6688 N.SHAWMOORS DR.CHENEQUE, WI 53029, USA, REG#019992 Account: ▮▮▮▮, *SUNSET* LLC (Address: 828

*Translated from Ukrainian into English*

Lane Allen Road, Suite 219, Lexington, KY 40504, USA, reg.Number ████████, Bank: Aizkraukles Banka, 23 Elizabetes St., Riga, LV-1010, Latvia, Acc. ████████████ as follows: the companies' incorporators, directors, number of employees, date of registration of company, duration and activities, where the company was wound up, the reasons of liquidation and date.

8.  To take the specimens of signature and handwriting from the directors of *TRENDMAX* LLC (Registration Number ████████ registration date 20.01.2001, address Montchanin Mills Building, Suite A, Route 100 & Rockland Road, Montchanin, Country of New Castle, DE 19710, USA) and to examine them, in particular, Mr. Patrick McLaughlin, Mr. Andre Soltas in respect to the following questions:

-   Did they sign any powers of attorney authorizing Ms. Lyudmyla Vasylivna Kachyns'ka to exercise the powers in the interests of the company, including opening of and giving orders related to the bank accounts with LATVIAN ECONOMIC COMMERCIAL BANK (LATEKO BANK) 21 BIRZNIEKA-UPISHA STREET, 1011 RIGA, LATVIA)?

-   Had the powers of attorney been given to any third parties authorizing them to exercise the powers in the interests of the company, including opening of and giving orders related to the settlement accounts with the banks?

-   What kind of relations did the company have with *Greenway-1* Limited Liability Company (Zaporizhzhya, Ukraine), *Tekhnoproekt* Private Company (Odesa, Ukraine), *MGR United Corporation* (USA)?

-   Did TRENDMAX LLC transfer the funds for MGR United Corporation under Contracts №012/TEX dated 20.03.03, №015/TEX dated 21.03.03 onto the accounts of *Greenway – 1* LLC, *Tekhnoproekt* Private Company (Odesa, Ukraine)? If so, what were the details of transfer? What contracts and documents were the grounds?

-   Did the company ever perform any other transfer of funds onto the accounts of *Greenway – 1* LLC, *Tekhnoproekt* Private Company (Odesa, Ukraine)? If so, when did and what documents were the grounds?

-   Do they meet Mr. Mikhail Gitelman? What do they know about him? What kinds of relations do you maintain with him? Did he work for TRENDMAX LLC?

-   Who were the representatives of the Ukrainian companies *Greenway-1* LLC, *Tekhnoproekt* Private Company, *MGR United Corporation* (USA)? What relations do you maintain? Can you

*Translated from Ukrainian into English*

describe their appearance? Do they have any details of how to contact them?

and in addition concerning any other questions which may arise in the course of interrogation.

9.  To take the specimens of handwriting and signatures of the directors of GATESTAR CONSULTANTS LTD LLC, in particular, Mr. Patrick McLaughlin, Mr. Sean O'Brennan, Mr. John Read, INTROALLIANCE L.L.C., in particular, Mr. A.A. Tkachenko, SUNSET LLC, in particular, the company's representative, Mr. A.I. Godetskiy, and examine them in regard to the questions as follows:

- What kind of relations did the specified companies have with *Greenway-1* Limited Liability Company (Zaporizhzhya, Ukraine), *Tekhnoproekt* Private Company (Odesa, Ukraine), *MGR United Corporation* (USA)?

- Did SUNSET LLC, GATESTAR CONSULTANTS LTD LLC, INTROALLIANCE L.L.C. transfer the funds for *MGR United Corporation* under Contracts №012/TEX dated 20.03.03, №015/TEX dated 21.03.03, №024/TEX dated 23.08.03, №022/TEX dated 21.08.03, №021/TEX dated 20.08.03, №019/TEX dated 19.08.03, №025/TEX dated 26.09.03 onto the accounts of *Greenway — 1* LLC, *Tekhnoproekt* Private Company (Odesa, Ukraine)? If so, what were the details of transfer? What contracts and documents were the grounds?

- Did the company ever perform any other transfer of funds onto the accounts of *Greenway-1* LLC, *Tekhnoproekt* Private Company (Odesa, Ukraine)? If so, when did and what documents were the grounds?

- Do they meet Mr. Mikhail Gitelman? What do they know about him? What kinds of relations do you maintain with him? Did he work for SUNSET LLC, GATESTAR CONSULTANTS LTD LLC, INTROALLIANCE L.L.C?

- Who were the representatives of the Ukrainian companies *Greenway-1* LLC, *Tekhnoproekt* Private Company, *MGR United Corporation* (USA)? What relations do they maintain? Can you describe their appearance? Do they have any details of how to contact them?

- Were Mr. Patrick McLaughlin, Mr. Sean O.Brennan, Mr. John Read appointed as the officials of GATESTAR CONSULTANTS LTD LLC or its authorized representatives by proxy? Was Mr. A.A. Tkachenko appointed as an official of INTROALLIANCE L.L.C or its authorized representative by proxy? Was Mr. A.I. Godetskiy appointed as an official of SUNSET LLC or its authorized representative by proxy?

*Translated from Ukrainian into English*

- Did SUNSET LLC on behalf of Mr. A.I. Godetskiy conclude contracts №CB/24-07-03/K dated 24.07.2003, №CB/02-08-03/K dated 02.08.2003, №CB/28-08-03/K dated 28.08.2003, №CB/10-09-03/K dated 10.09.2003, №CB/23-09-03/K dated 23.09.2003 in 2003 for supply of first grade long-grain rice by SUNSET LLC in favor of *Trade House Basis* LLC. If so, what were the conditions for concluding these contracts, settlements, etc.?
- Did GATESTAR CONSULTANTS LTD LLC on behalf of Mr. John Read conclude contracts №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IU, №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-RF, №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-PM in 2003 for performing scientific and technological works? If so, what were the conditions for concluding these contracts, settlements, etc.?
- Did INTROALLIANCE L.L.C on behalf of Mr. A.A. Tkachenko conclude the contract №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-TI in 2003 for performing scientific and technological works? If so, what were the conditions for concluding the contract, settlements, etc.?

and also concerning any other questions which may arise in the course of interrogation.

10.  To take the specimens of seals and stamps of TRENDMAX LLC, GATESTAR CONSULTANTS LTD LLC, INTROALLIANCE L.L.C, SUNSET LLC.

11.  Seize the documents in respect of economical and financial relations of *MGR United Corporation* with TRENDMAX LLC, GATESTAR CONSULTANTS LTD LLC, INTROALLIANCE L.L.C., SUNSET LLC, F&T Sp.z.o.o. (Gdynia, Poland), *Greenway-1* Limited Liability Company (Zaporizhzhya, Ukraine), *Comertsiyni Poslugy* Private Company (Odesa, Ukraine), *Tekhnoproekt* Private Company (Odesa, Ukraine).

Please, forward the response with materials obtained in the international investigative request at the address: 69107, Ukraine, Zaporizhzhya, prospect Lenina, bud. 166, Tax Militia Investigative Department of the State Tax Administration of Ukraine, Zaporizhzhya oblast.

Should you found impossible to meet this request, please, provide us with information of circumstances which obstruct to do so or conditions required to fulfill this request.

The Tax Militia Investigative Department of the State Tax Administration, Zaporizhzhya Oblast, expresses thanks for judicial assistance and takes this chance to show respect to the law-enforcement authorities of the United States of America.

Enclosures:
-    Decision on taking the specimens of handwriting and signatures of the officials of MGR United Corporation, 1 page;

*Translated from Ukrainian into English*

- Decision on taking the specimen of handwriting and signature of Mr. Mikhail Gitelman, 1 page;
- Decision on taking the specimens of handwriting and signatures of the officials of GATESTAR CONSULTANTS LTD LLC, 1 page;
- Decision on taking the specimens of handwriting and signatures of the officials of TRENDMAX LLC, 1 page;
- Decision on taking the specimens of handwriting and signatures of the officials of INTROALLIANCE L.L.C., 1 page;
- Decision on taking the specimens of handwriting and signatures of the officials of SUNSET LLC, 1 page;
- Decision on taking the specimens of seal and stamp of GATESTAR CONSULTANTS LTD LLC, 1 page;
- Decision on taking the specimens of seal and stamp of SUNSET LLC, 1 page;
- Decision on taking the specimens of seal and stamp of GATESTAR CONSULTANTS LTD LLC, 1 page;
- Decision on taking the specimens of seal and stamp of TRENDMAX LLC, 1 page;
- Decision on taking the specimens of seal and stamp of MGR United Corporation, 1 page;
- Decision on seizure of the financial and economic documents of SUNSET LLC, 1 page;
- Decision on seizure of the financial and economic documents of MGR United Corporation, 1 page;
- Decision on seizure of the financial and economic documents of TRENDMAX LLC, 1 page;
- Decision on seizure of the financial and economic documents of GATESTAR CONSULTANTS LTD LLC, 1 page;
- Decision on seizure of the financial and economic documents of INTROALLIANCE L.L.C., 1 page.

**Investigator of**
**Tax Militia Investigative Department**
**of the State Tax Administration for**
**Zaporizhzhya Oblast**                                   **A.V. Gaidar**


Telephone (0612) 26-08-71
Fax (0612) 13-50-43



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
IN RE LETTER OF REQUEST          )
FROM THE UKRAINE                 )
IN THE MATTER OF                 )        Misc No. 07-
GREENWAY 1, LLC                  )
                            ORDER
```

Upon application of the United States of America; and upon examination of a letter of request from the Ukraine whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in the Ukraine and the Court being fully informed in the premises, it is hereby

**ORDERED,** pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Ukrainian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in the Ukraine, which procedures may be specified in the request or provided by the Ukrainian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Ukrainian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2007.

_____
United States District Court Judge

2